**Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**BEST BUILT HOMES, INC. and Daniel Belanger, Jr., Individually and as President of Best Built Homes, Inc., Defendants.**

No. 91–CV–0796E(F).

United States District Court, W.D. New York.

May 30, 1995.

**48**

Janice Silberstein, U.S. Dept. of Labor, Office of the Sol., New York City, for plaintiff.

Thomas Burgasser, N. Tonawanda, NY, for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This action is brought pursuant to the Fair Labor Standards Act of 1938 ("the Act"), 29 U.S.C. § 201 *et seq.*, and presents allegations, *inter alia*, that the defendants, in violation of the Act, withheld overtime compensation due

the corporation's employees and altered its records to disguise that such withholdings had occurred. The parties having advised this Court that they had settled their dispute, the action was dismissed without prejudice to its being reopened within thirty days if such settlement were not consummated. *See* Order filed August 9, 1993. Now before this Court is the plaintiff's motion to enforce the settlement agreement. The motion will be granted.

On August 6, 1993 the plaintiff's attorney Janice Silberstein, Esq., and defendants' attorney R. Thomas Burgasser, Esq., advised this Court that they had settled their dispute. Later that day the parties, via a telephone conference call, put their settlement on the record. The relevant portions of the transcript of such settlement conference are as follows:

"The Court: [The lawyers] are going to call in and put a settlement on the record.

\* \* \* \* \* \*

"Ms. Silberstein: Defendants Best Built Homes, Incorporated and Daniel Belanger, Jr. have agreed to execute a consent judgment in which they have agreed, among other things, to the following: that the defendant will be permanently enjoined from the withholding of the payment of back wages due to 30 employees listed on Exhibit A of the Complaint, in the amount of $21,434.00. It is further agreed that the defendants will pay $3,000.00 of these back wages by September 1st, 1993 in the manner indicated in the judgment. And that the balance of $18,434.00 will be paid in 36 monthly installments commencing October 1st, 1993 pursuant to the schedule attached and incorporated in the judgment. The defendants have further agreed to be permanently enjoined from violating Section 711C and 15A2 of the Fair Labor Standards Act.

"Mr. Burgasser: And this is Tom Burgasser. That is correct Your Honor.

"The Court: All right. Thank you. I will issue an Order which will dismiss the case, and will 30 days be sufficient time for the reopener, if necessary, or do you want more time? Obviously, I'm not going to

run it for the 36 months but * * * once you get the papers filed, if there's any violation of that, of course, then you come back to me, or some other way, on the basis of the agreement today.

"Mr. Burgasser: Okay, 30 days should be enough. We should have this wrapped up in 10, shouldn't we?

"Ms. Silberstein: Right, yes.

"Mr. Burgasser: Or less. That will be enough. That will be sufficient Your Honor." Transcript of August 6, 1993 Settlement Conference Via Telephone Before the Honorable John T. Elfvin ("Tr.").

What happened subsequent to this conference is partially disputed. Undisputed is the following: On August 12th Silberstein forwarded to Burgasser for execution a Consent Judgment that she had drafted that incorporated the above-mentioned terms. Having received no response, she "faxed" Burgasser a letter September 2nd stating that, if she did not receive the executed Consent Judgment by the 3rd, she would move this Court to enforce the settlement agreement. The attorneys then (on the 2nd and 3rd) engaged in further negotiations concerning the amount of the first installment payment. Burgasser informed Silberstein on the 3rd that he "expected" defendant Belanger to execute the Consent Judgment that afternoon. However, apparently because he was dissatisfied with the terms of the settlement, Belanger never signed it.

Based on its questioning of defendant Belanger at the November 17, 1993 oral argument on the instant motion, this Court has factually determined that Burgasser had the authority to speak, act and enter into binding agreements on Belanger's behalf at all times relevant to this lawsuit.

At issue is whether the oral, on-the-record recitation of the settlement agreement by Silberstein and Burgasser's assent thereto constituted an enforceable settlement agreement or was instead, as the defendants contend, merely part of on-going settlement negotiations between the parties that were never consummated and thus are not enforceable.

A settlement, once reached, is a binding contract. *Janneh v. GAF Corp.,* 887 F.2d 432, 436 (2d Cir.1989), *cert. denied,* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Lawsuits may be settled by oral contract and such are enforceable under federal law. *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981); *Autera v. Robinson,* 419 F.2d 1197, 1198 & fn. 1. (D.C.Cir.1969) A district court has the inherent, equitable "power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corporation,* 490 F.2d 714, 717 (2d Cir.1974); *see also Wilson v. Wilson,* 46 F.3d 660, 664 (7th Cir.1995). However, "a district court may only enforce *completed* settlement agreements * * * [and] where the material facts concerning the existence or terms of an agreement to settle are in dispute" an evidentiary hearing re such must be conducted. *Ibid.*

In opposition to the instant motion, Burgasser (on the defendants' behalf) argues that the settlement agreement was never consummated because "[d]uring all stages of negotiation" with the plaintiff, he "qualified the terms [of the settlement agreement] as subject to the approval and execution by the Defendants." Affidavit in Opposition to Plaintiff's Motion to Enforce ("Burgasser Affidavit"), at ¶ 22. Burgasser concedes that he agreed to the terms spelled out during the above-referenced settlement conference, but notes that he did so "as attorney, subject to final ratification by his client of the Consent Judgment and the terms and conditions." *Id.,* at ¶ 12. Such arguments are mere equivocations. Burgasser and Silberstein did not call this Court on August 6, 1993 to memorialize a stage of their negotiations; they unambiguously informed this Court that they *had reached a settlement* and wished to spell such out on the record. They then did just that. The transcript of the conference contains not even a hint that Burgasser's acceptance of the terms was subject to the defendants' "final ratification" or of other conditional language on Burgasser's part. His instant argument that he accepted the terms "as attorney," subject to the "final ratification" of his client is essentially an

argument that he did not have authority to consummate the settlement. The argument is unavailing because, as mentioned, this Court has determined that he did have such authority. That the parties intended that Belanger subsequently would execute a written Consent Judgment embodying the terms set forth orally on the record, and yet ultimately did not, does not negate the enforceability of the settlement. *See International Telemeter Corp. v. Teleprompter Corp.,* 592 F.2d 49, 56 (2d Cir.1979); *see also* Restatement (Second) of Contracts § 26 (Tent. Draft # 1–7 1962) ("Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifested an intention to prepare and adopt a written memorial thereof; but circumstances may show that the agreements are preliminary.")

■ Burgasser also argues that the defendants refused to execute the Consent Judgment because they "still had a great deal of concern with the restraint section," because they "would be unable to honor" it and because they believed "they had done nothing wrong to warrant" the judgment. Burgasser Affidavit, at ¶¶ 15 & 25. Such *post facto* arguments have no force because they are not relevant to the question of enforceability—*i.e.,* the question whether they *entered into* a binding settlement. Absent any hint that, *e.g.,* the parties mutually agreed to rescind the agreement, these arguments merely suggest that the defendants got "cold feet," a condition for which the law provides no warming remedy. *See, e.g., Glass v. Rock Island Refining Corp.,* 788 F.2d 450, 454 (7th Cir.1986) ("A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient").

■ An issue remains as to whether the proposed Consent Judgment, which contains some terms that were not specifically laid out on the record, should be enforced in its entirety, or whether an evidentiary hearing is required to settle the unspecified terms. *See Wilson, supra,* 46 F.3d at 664. The defendants do not directly address his issue, but it is clear that an evidentiary hearing is not required. Firstly, Silberstein, as a preamble to her recitation of the points of the settlement, stated that the parties had "agreed to execute a consent judgment in which they have agreed, *among other things,* to" the terms quoted above (Tr. at 2), thereby underscoring that the parties had agreed on terms in addition to those indicated on the record. Secondly, Burgasser tacitly admits that the proposed Consent Judgment, which was forwarded to him on August 12, 1993, incorporates all the terms to which he and Silberstein had agreed at the time of the August 6th settlement conference. *See* Burgasser Affidavit, at ¶ 13. In other words, although not all of the terms in the Consent Judgment were spelled out on the record, there is no suggestion that it contains terms that had not theretofore been agreed upon by Burgasser and Silberstein at the time of the conference. Burgasser instead contends that *his client* never agreed to all the terms but such argument is, as discussed, without merit. Therefore, the proposed Consent Judgment will be adopted by this Court, with the exception that the payment dates in the payment schedule in Exhibit A of the Judgment will be updated to compensate for this Court's tardiness in deciding the instant motion.

Accordingly, it is hereby *ORDERED* that the plaintiff's motion to enforce the settlement agreement is granted and that the proposed Consent Judgment will be adopted by this Court forthwith.